UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL JUNIOR HURT,

       Plaintiff                          Civil Action No. 10-14736

v.

                                   District Judge John Corbett O'Meara
                                   Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Samuel Junior Hurt brings this action under 42 U.S.C. §405(g), challenging

a final decision of Defendant Commissioner denying his application for Disability Insurance

Benefits and Supplemental Security Income.  Before the Court are the parties' cross-motions

for summary judgment which have been referred for a Report and Recommendation pursuant

to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's

motion [Doc. #11] be DENIED and Defendant's motion [Doc. #14] GRANTED.

## PROCEDURAL HISTORY

      Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Insurance ("SSI") on January 8, 2007, alleging disability as of April 2, 2006 (Tr.

101-102, 109-110).  After the initial denial of benefits, Plaintiff requested an administrative

hearing, held on August 17, 2009 in Oak Park, Michigan before Administrative Law Judge

("ALJ") Michael F. Wilenkin  (Tr. 18).  Plaintiff, unrepresented, testified, as did Vocational

Expert Elaine Tripi (Tr. 20-37, 38-41).  On September 9, 2009, ALJ Wilenkin determined

that Plaintiff was not disabled (Tr. 17).  On September 22, 2010, the Appeals Council denied

review (Tr. 1-3).   Plaintiff filed for judicial review in this Court on November 29, 2010.

## **BACKGROUND FACTS**

Plaintiff, born August 4, 1977, was 32 when the ALJ issued his decision (Tr. 17, 101).

He completed eleventh grade and worked previously as a lumber yard clerk, meat processor,

and high/low driver (Tr. 22,120, 124).  Plaintiff's application for benefits alleges disability

as a result of asthma and the "[aftereffects] of [a] gunshot" to the right knee (Tr.119).

### A.  Plaintiff's Testimony

Plaintiff testified that he currently lived in an apartment with his daughter (Tr. 21).

He reported leaving school after eleventh grade, adding that he had not received vocational

training (Tr. 21).  He stated that he did not hold a driver's licence and had taken a bus to the

hearing (Tr. 21).  He indicated that his last three jobs involved hi/low driving (Tr. 22-23).

He reported that his most recent position required him to lift up to 50 pounds (Tr. 22).

Plaintiff stated that he stopped working in April, 2006 because of asthma and low

back pain (Tr. 23).  He indicated that his asthma was triggered by dust, dirt, and smoke (Tr.

24).  Plaintiff stated that during an asthma attack, he experienced trouble breathing and

walking (Tr. 25).  He reported taking bronchodilators on a daily basis (Tr. 26).

-2-

Plaintiff also alleged chronic low back spasms, stating that back pain occasionally radiated into his right hip and leg (Tr. 26-27). He estimated that he could stand for up to an hour and a half and sit for up to an hour before experiencing shooting pains (Tr. 28). He stated that he was able to walk for two blocks (Tr. 29). He also testified that he experienced leg numbness (Tr. 29). He stated that he took prescribed pain medication and had attended physical therapy twice (Tr. 30). He denied that physical therapy had helped his condition but stated that the pain medication gave him some relief (Tr. 30). He alleged that back problems caused sleep disturbances (Tr. 32).

Plaintiff testified that his back problems and the resulting lack of sleep created stress and that he had been seeing a psychiatrist for the past 18 month who prescribed sleeping agents and anti-anxiety drugs (Tr. 32). Plaintiff alleged panic attacks that lasted approximately 15 minutes and were characterized by sweating, labored breathing, and concentrational difficulties (Tr. 33). He alleged that as a result of back problems, he occasionally required help shaving, bathing, and dressing (Tr. 34). He denied performing household chores or shopping (Tr. 35). He stated that he attended church but was not otherwise involved in church affairs (Tr. 35). He alleged difficulty kneeling, bending, and climbing stairs (Tr. 36). Plaintiff stated that back pain obliged him to recline "four or five" times each day for approximately 10 minutes (Tr. 37). He reported spending his days watching television or trying to walk (Tr. 37).

### B. Medical Evidence

#### 1. Treating Sources

In December, 2006, Plaintiff sought emergency treatment for asthma (Tr. 154). Treating notes state that Plaintiff indicated that he did not experience "frequent symptoms" of asthma (Tr. 154). He was given oral steroids, albuterol and Atrovent (Tr. 154-155). He exhibited 5/5 strength in all extremities with a full range of motion (Tr. 155). An x-ray of the chest was unremarkable (Tr. 161). Plaintiff "was alert and oriented times three in an appropriate mood" (Tr. 158). He was discharged in stable condition (Tr. 156).

A February, 2009 psychiatric evaluation states that Plaintiff admitted smoking canabis, drinking up to a fifth of alcohol daily, and a history of heroin and crack cocaine use (Tr. 208, 240). Plaintiff exhibited an appropriate effect and an attentive appearance but his motivation for treatment was deemed "tenuous" (Tr. 210). He denied suicidal or homicidal urges or activity (Tr. 210). His speech was spontaneous (Tr. 210). He was diagnosed with depression (Tr. 238). Noting a history of substance abuse and occupational problems, the evaluator assigned Plaintiff a GAF of 50[1] (Tr. 213). His physical health was deemed "good" (Tr. 285). Plaintiff was encouraged to seek employment (Tr. 241).

In May, 2009, a Medical Examination Report states that Plaintiff experienced back pain as a result of a disc prolapse (Tr. 215). Plaintiff was limited to lifting less than 10 pounds, but was deemed in "stable" condition (Tr. 217). The Report states further that Plaintiff could sit for six hours in an eight-hour workday but could stand or walk for less than

---

[1]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

two (Tr. 217).  The same month, an MRI of the lumbar spine showed the presence of a disc protrusion at L5-S1 impinging on the left S1 nerve root (Tr. 219).  Therapy notes state that Plaintiff was currently taking Paxil, but denied side effects (Tr. 269).

In August, 2009, therapy notes state that Plaintiff was "not interested in employment" (Tr. 228).  His condition was deemed stable by psychiatrist Jong Choe (Tr. 234).  In September, 2009, Plaintiff was again discouraged from cannabis use (Tr. 225).  He was "alert and oriented" (Tr. 226).

### 2.  Consultive and Non-Examining Sources

In March, 2007, E. Montasir, M.D. conducted a physical examination of Plaintiff on behalf of the SSA (Tr. 169-173).  According to Plaintiff's brother, Plaintiff had not spoken since sustaining a gunshot wound to the right knee and being pistol whipped 18 months  earlier (Tr. 169).  According to Plaintiff's brother, Plaintiff experienced mood swings (Tr. 169).  Noting that Plaintiff was nonverbal, Dr. Montasir found "significant psychological effect" as a result of the gunshot wound incident (Tr. 171).  He observed that Plaintiff's asthma was well controlled with medication and noted minimal gait problems (Tr. 171).  Plaintiff exhibited 5/5 strength (Tr. 171).  Dr. Montasir stated that he was unable to perform pulmonary function tests due to Plaintiff's alleged inability to follow instructions (Tr. 172).    The  following  month, a non-examining Residual Functional Capacity Assessment (physical) by Saadat Abbasi, M.D. found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 175).  He was limited to occasional

climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 176).  The Assessment found the absence of manipulative, visual, or communicative limitations but found that Plaintiff should avoid even moderate exposure to airborne contaminants (Tr. 178).  Dr. Abbasi found that based on the scant treating records, Plaintiff's statements "appear[ed] only partially credible" (Tr. 179).

In May, 2007, Terrance A. Mills, Ph.D. attempted to conduct a psychological assessment of Plaintiff (Tr. 182-187).  Dr. Mills noted that Plaintiff did not speak for the duration of the exam (Tr. 182).  According to Plaintiff's brother, Plaintiff experienced mood swings and was unable to bathe, dress, or shave (Tr. 184).  Dr. Mills completed his report by noting as follows:

> [I]t seems [Plaintiff's] brother could have arranged to have Samuel seen by a physician rather than caring for his daily needs without help.  It would seem if he is totally unable to communicate or do things for himself that he would not be cared for at home.  Also, brother stated he shaved Samuel but it appears somewhat odd that he would go through the trouble of shaving a goatee or mustache.  If Samuel truly was unable to do anything for himself it would seem brother would shave him in a manner that was the easiest to care for.

(Tr. 185).  Plaintiff was assigned a GAF of 50  (Tr. 185).

In July, 2007, a Psychiatric Review Technique found the absence of a mental impairment (Tr. 194).  John Pai, M.D. pointed out that Plaintiff's alleged inability to understand simple instructions, function, or speak was contradicted by December, 2006 emergency treatment notes and self-admitted Activities of Daily Living ("ADSs") stating that he was able to buy his daughter school supplies, count change, and take public transportation (Tr. 206).  Dr. Pai concluded that Plaintiff was not credible (Tr. 206).

-6-

### C.      Vocational Expert Testimony

VE Elaine Tripi classified Plaintiff's past relevant work as a hi/low driver as exertionally medium and semiskilled and work as a general laborer as light/unskilled[2] (Tr. 38).   The VE testified that if Plaintiff's testimony were fully credited, he would be unable to perform any work because of severe back pain, the need to lie down multiple times each day, and reactions to environmental pollutants (Tr. 38-39).   Taking into account Plaintiff age, education, and work experience, the ALJ then posed the following set of limitations:

> [L]et's assume that he is able to sit six of eight hours of an eight hour work day [and stand for two], lift as much as ten pounds only occasionally and lesser weight somewhat more frequently.   You may assume well established history of being in discomfort in the lower back and right lower extremity due to what appears to be disc prolapsed and nerve root compression at the . . . first sacral vertebra.   You may assume that while there's . . . a certain element of discomfort associated with this underlying pathology, it is not of sufficient severity, intensity, or frequency to interfere with or otherwise preclude functioning in the manner I suggest.   You may assume, however, that there are a variety of activities that would be circumscribed or concluded in total as a result of this underlying problem.   He should not be required to perform repetitive stooping, squatting, kneeling, crouching, bending, should not be required to twist or torque his torso throughout the extremes of range of motion, should not be required to use his upper extremities above shoulder level.   You may assume some pulmonary difficulties that would suggest a need to avoid moderate to heavy concentrations of atmospheric irritants.   You may assume what appears to be a history of some anxiety. . . . [T]he emotional

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

difficulties would suggest the need to perform relatively simple tasks. . . . [H]e should not be required to perform tasks wherein the productivity thereof is directly interrelated with the work of other people and [vice versa]. Contact with supervisory personnel and coworkers . . . should be fairly limited.

(Tr. 40).

Based on the above limitations, the VE testified that the individual would be unable to perform any of Plaintiff's former jobs, but could work as a visual inspector, sorter, and assembler, noting approximately 8,000 such jobs in the Detroit area (Tr. 41). The VE found that if the same individual were also limited by the need to change positions at will, the job numbers would be reduced to 4,000 (Tr. 41). The VE concluded by stating that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") (Tr. 41).

### D.    The ALJ's Decision

Citing Plaintiff's treating records, ALJ Wilenkin found that Plaintiff experienced the severe impairments of asthma, degenerative disc disease of the lumbar spine, history of gunshot wound to the leg, anxiety, depression, and poly substance abuse, but that none of the conditions met or equaled a condition listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 10-11). The ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work "except that he is limited to simple and low-stress work providing for a sit/stand option" (Tr. 12). Citing the VE's testimony, he found that Plaintiff could perform the work of a sorter, inspector, and assembler (Tr. 16).

The ALJ found that Plaintiff's allegations of disability were "not credible" to the

extent that they differed from the above RFC, noting that treating records did not support the claims of disabling back problems (Tr. 14-15). He cited emergency treatment records stating that Plaintiff's asthma was "mild and intermittent" (Tr. 14).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

-9-

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The ALJ's Findings Regarding Plaintiff's Back Condition

Plaintiff faults the ALJ's finding of disc protrusion at L5-S1 but no "disc herniation" (Tr. 14), contending that a disc protrusion is synonymous with a disc herniation.  *Plaintiff's Brief* at 9-10 (citing *Merriam-Webster's Medical Dictionary,* http://www.merriam-webster.com/medical/herniate).  He argues that the ALJ's misinterpretation taints the remainder of the findings pertaining to back problems.  *Id.*  On a related note, Plaintiff contends that a medical examiner's May, 2009 finding that he would be unable to lift even 10 pounds ought to have been adopted by the ALJ.  *Id.* at 10 (citing Tr. 217).

-10-

The ALJ's interpretation of the MRI was not erroneous. The American Journal of Neuroradiology ("AJNR") notes that a distinction is commonly made between protruded and herniated discs, the latter considered the more serious condition. *Id.,* http://www.asnr. org/spine _nomenclature /glossary.shtml. A protruded disc, while technically one form of "herniation," regularly refers to a protrusion or herniation contained within an *intact* anulus. *Id.* In contrast, a "*herniated* disc generally refers to displacement of disc tissues through a disruption in the anulus." *Id.* (emphasis added). The ALJ's finding of disc protrusion but no anulus tear or "disc herniation" amounts to a conventional reading of the MRI (Tr. 14).

Even assuming that the ALJ downplayed the significance of the imaging study, substantial evidence supports the conclusion that Plaintiff could perform sedentary work. As noted by the ALJ, December, 2006 emergency room records state that Plaintiff exhibited 5/5 strength in all extremities and a full range of motion (Tr. 155). As of February, 2009, his physical health was described as "good" (Tr. 285). November, 2009 therapy records state that Plaintiff was seeking disability on the basis of asthma and reported experiencing headaches, but makes no mention of back problems (Tr. 238). While Plaintiff notes that one consultive source stated that he was unable to lift even 10 pounds (Tr. 217) the transcript as a whole supports the conclusion that he could perform sedentary work.

### B. The ALJ's Findings Regarding Asthma

Plaintiff argues next that the RFC does not sufficiently reflect his limitations as a result of asthma. *Plaintiff's Brief* at 10-11. He asserts that "[n]o consideration was given as to whether [he] could do those activities" on a regular basis. *Plaintiff's Brief* at 10-12.

-11-

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir.2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account ." *Id.* (citing 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. *See* 20 C.F.R. § 404.1545(a) (RFC must be based on all relevant evidence).

In a nutshell, Plaintiff argues that because the ALJ found that asthma was a severe impairment at Step Two of the analysis, he erred by failing to mention the condition in the RFC. However, the omission of asthma or more generally, respiratory problems, from the RFC does not constitute reversible error. First, the ALJ discussed Plaintiff's limitations as a result of asthma at length, citing treating records from December, 2006 indicating that the condition was well-controlled with medication (Tr. 14). None of the treating or consultive records suggest that Plaintiff's asthma was disabling or created serious work limitations. Thus, the ALJ's conclusion that "[t]here is no evidence to suggest that he has a degree of asthma that would preclude him from seated work that would not require any prolonged walking or standing, lifting over 10 pounds, or other exertional activities that might precipitate or aggravate shortness of breath" is well supported by the record (Tr. 14).

I also disagree with Plaintiff's implied contention that the RFC ought to have made reference to his need to avoid airborne pollutants. The hypothetical question to the VE (forming the basis of the VE's job findings) acknowledged the condition of asthma by stating "a need to avoid moderate to heavy concentrations of atmospheric irritants" (Tr. 40). Thus,

-12-

the VE's finding that Plaintiff could perform the work of a sorter, inspector, and assembler (despite the need to avoid airborne pollutants), as adopted by the ALJ, reflect his pulmonary limitations (Tr. 16, 41).  Likewise, given the present record, the ALJ did not err by omitting the need "to leave work unexpectedly"as a result of respiratory problems from the hypothetical limitations.  Plaintiff cannot point to any evidence to support the contention that asthma would require him to leave work unexpectedly on a regular basis.  "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994) ( *citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

### C.  Substantial Evidence Supports the ALJ's Psychological Findings

Last, Plaintiff argues that the ALJ glossed over his psychological limitations, ignoring treating and consultive records supporting his claim of psychological disability.  *Plaintiff's Brief* at 13-14.  He asserts that the ALJ perfunctory analysis of his mental condition prevents this Court from conducting a meaningful review.  *Id.* at 13.

The ALJ's analysis of the psychological records does not contain procedural or substantive error.   The ALJ found only "mild" limitations in activities of daily living and social function, noting that Plaintiff took his daughter to school, used public transportation, bought school supplies, and continued to socialize (Tr. 11).  While he found *moderate* deficiencies in concentration, persistence, and pace,  Plaintiff does not explain how moderate concentrational deficiencies would preclude the jobs of sorter, inspector, or assembler.

-13-

Moreover, the ALJ reasonably found that Plaintiff's well documented cannabis and alcohol abuse contributed to his psychological limitations.   While Plaintiff contends that his allegations of extreme behavior ought to have been adopted *i. e.,* "anger with screaming outbursts," *etc.* (Tr. 213) the treating notes do not state that Plaintiff exhibited such behavior. Rather, the therapist is recording Plaintiff's account of his own behavior.   To the contrary, treating notes from the same month state that he exhibited an appropriate effect (Tr. 210).

More generally, the treating and consultive psychological records detract from, rather than support, Plaintiff's entitlement to benefits on *any* basis.  Contrary to his position that his psychological problems were disabling, his therapist repeatedly encouraged him to seek work (Tr. 234, 241).  Although as of March, 2007, Plaintiff had been allegedly unable to speak for 18 months, December, 2006 emergency notes state that he was able to communicate normally during the course of his emergency room treatment (Tr. 158,169).   Plaintiff's reliance on Dr. Mills' May, 2009 consultive assessment to support the "mental disability" claim is not well taken.  In fact, Dr. Mills was rightfully skeptical of Plaintiff's claim that he was unable speak, groom himself, or follow simple instructions (Tr. 185).  In February, 2009, Plaintiff's motivation for psychological treatment was deemed "tenuous" (Tr. 210).  August, 2009 treating notes state that he was "not interested in employment" (Tr. 228).  Thus, the ALJ's inference that Plaintiff's psychological condition was not as severe as alleged is well supported.

The record before this Court does not contain strong support for the Plaintiff's disability claim. The determination that he was not disabled was well within the "zone of

-14-

choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the above reasons, I recommend that Plaintiff's motion for summary judgment [Doc. #11] be DENIED and Defendant's motion [Doc. #14] GRANTED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 6, 2012


The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 6, 2012.

s/Johnetta M. Curry-Williams
Case Manager

-16-